**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PAULE JEANJACQUES,** *et al.* | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 21-3670** |
| | : | |
| **AMC ENTERTAINMENT HOLDINGS,** | : | |
| **INC.,** *et al.* | : | |

## <u>ORDER-MEMORANDUM</u>

**AND NOW**, this 30th day of September 2021, upon considering Defendant's Motion to

dismiss (ECF Doc. No. 8), Plaintiffs' Response (ECF Doc. No. 11), and finding Plaintiffs

sufficiently plead claims for negligence but fail to sufficiently plead intentional infliction of

emotional distress, it is **ORDERED** Defendant's Motion (ECF Doc. No. 8) is **GRANTED in part**

and **DENIED in part** as we dismiss Plaintiffs' intentional infliction of emotional distress claim

without prejudice but require Defendants answer the remaining claims no later than **October 14,**

**2021**.

### *Analysis*

Paule Jeanjacques and Mayama Kesselly purchased movie tickets for themselves and their

children at Philadelphia Mills AMC, a multi-screen movie theater owned and operated by

American Multi-Cinema, Inc.[1] Mses. Jeanjacques and Kesselly, both African-American women,

arrived at the theater at 5:00 PM for a 7:00 PM showing of "The Lion King."[2] Mses. Jeanjacques

and Kesselly re-entered the theater at 6:30 PM.[3] Theater employees then admitted Mses.

---

[1] ECF Doc. No. 8-4 ¶ 15.

[2] *Id.*

[3] *Id.* ¶¶ 18–19.

Jeanjacques and Kesselly and sent them to their screen.[4] There is no dispute today the women paid for tickets to see "The Lion King" at 7:00 PM in the theatre.

Multiple patrons approached Mses. Jeanjacques and Kesselly to confirm their assigned seats.[5] Mses. Jeanjacques and Kesselly discovered other patrons held duplicate tickets for their seats.[6] An unidentified employee then asked Mses. Jeanjacques and Kesselly to leave the theater in front of other patrons.[7] The employee continued to order Mses. Jeanjacques and Kesselly to leave after they showed him their tickets.[8] The women left the theater.[9] Ms. Kesselly took her child to the bathroom.[10]

The theater manager approached Mses. Jeanjacques and Kesselly outside the theater.[11] He shouted at them and accused them of not paying for their tickets.[12] Mses. Jeanjacques and Kesselly showed their ticket stubs.[13] The manager continued to refuse entrance.[14] The manager shouted,

---

[4] *Id.* ¶ 21.

[5] *Id.* ¶¶ 23–24

[6] *Id.* ¶ 24.

[7] *Id.* ¶ 26.

[8] *Id.* ¶¶ 27–28.

[9] *Id.* ¶ 29.

[10] *Id.* ¶ 30.

[11] *Id.* ¶ 31.

[12] *Id.* The manager also inquired how Mses. Jeanjacques and Kesselly entered the theater. *Id.*

[13] *Id.* ¶ 32.

[14] *Id.*

"Leave! Get out! Get out!"[15] The manager "utilized security guards to have [Mses. Jeanjacques and Kesselly] forcibly removed from the theater."[16]

Ms. Jeanjacques's child started crying and asked the manager to let them see the movie.[17] The manager told the child, "You can't see the movie, your mommy didn't pay."[18] Other employees became involved.[19] The manager then "loudly" stated to other employees, "you know black people, they don't like to pay for movies."[20] The manager said he knew the patrons failed to pay because Ms. Kesselly "was hiding," referring to Ms. Kesselly changing her child's diaper.[21]

Mses. Jeanjacques and Kesselly presented their ticket stubs to other theater employees, requesting admission to see the movie in another theater or a refund.[22] The manager refused.[23] He refused to view video footage showing Mses. Jeanjacques and Kesselly's ticket purchase.[24] Mses. Jeanjacques and Kesselly called the police.[25] The manager told the police Mses. Jeanjacques and

---

[15] *Id.* ¶ 33.

[16] *Id.* ¶ 51.

[17] *Id.* ¶ 34.

[18] *Id.* ¶ 35.

[19] *Id.* ¶ 36.

[20] *Id.* ¶ 37.

[21] *Id.* ¶ 38.

[22] *Id.* ¶¶ 39–40, 42.

[23] *Id.* ¶¶ 41, 43.

[24] *Id.* ¶¶ 44–45.

[25] *Id.* ¶ 46.

Kesselly did not pay for the tickets.[26] The police asked the manager to review the video footage.[27] The manager refused.[28] Ms. Jeanjacques then called the theater's 1-800 number to report the incident.[29] The incident caused Mses. Jeanjacques and Kesselly "mental pain and suffering, sleeplessness, paranoia, fear, anxiety, depression, embarrassment, [and] humiliation."[30]

Mses. Jeanjacques and Kesselly now sue alleging: (1) negligent hiring, training, supervision, and retention; (2) intentional infliction of emotional distress; (3) general negligence; and (4) negligence under premises liability. The theater moves to dismiss.[31] We grant the theater's

---

[26] *Id.* ¶ 48.

[27] *Id.* ¶ 49

[28] *Id.*

[29] *Id.* ¶ 53.

[30] *Id.* ¶ 56.

[31] Federal Rule of Civil Procedure 12(b)(6) requires a complaint to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is to test the sufficiency of the factual allegations in a complaint. *Sanders v. United States*, 790 F. App'x 424, 426 (3d Cir. 2019). If a plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face," the court should dismiss the complaint. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content . . . allow[ing] the court to draw the reasonable inference . . . the defendant is liable for the misconduct alleged." *Robert W. Mauthe M.D., P.C. v. Spreemo, Inc.*, No. 19-1470, 2020 WL 1492987, at *2 (3d Cir. Mar. 25, 2020) (quoting *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017)). While "[t]he plausibility standard is not akin to a 'probability requirement,'" it does require the pleading show "more than a sheer possibility . . . a defendant has acted unlawfully." *Riboldi v. Warren Cty. Dep't of Hum. Servs. Div. of Temp. Assistance & Soc. Servs.*, 781 F. App'x 44, 46 (3d Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient." *Id.* (quoting *Iqbal*, 556 U.S. at 668).

In determining whether to grant a motion to dismiss, "we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff" but "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Id.* at *1 (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878–79 (3d Cir. 2018)). Our Court of Appeals instructs us to use a three-step analysis for motions to dismiss. First, we "must take note of the elements the plaintiff must plead to state a claim"; next, we should

Motion in part and dismiss Mses. Jeanjacques and Kesselly's intentional inflectional of emotional distress claim.

### *Mses. Jeanjacques and Kesselly plead negligence.*

The theater argues Mses. Jeanjacques and Kesselly improperly plead their negligence claims as a matter of pleading procedure by masking them as claims under Title II of the Civil Rights Act of 1964.[32] It argues Congress provides only injunctive relief through Title II so Mses. Jeanjacques and Kesselly cannot seek damages.[33] Mses. Jeanjacques and Kesselly respond their Title II allegations do not extinguish their well-plead negligence claims.[34] We agree with Mses. Jeanjacques and Kesselly.

Congress mandates "[a]ll persons shall be entitled to be free, at any establishment or place, from discrimination or segregation of any kind on the ground of race."[35] Congress provides "a civil action for preventive relief" against those violating Title II.[36] Damages are unavailable.[37]

---

identify allegations not entitled to the assumption of the truth because they are no more than conclusions; and last, "when there are well-pleaded factual allegations," we "should assume their veracity and . . . determine whether they plausibly give rise to an entitlement to relief." *In re Synchronoss Techs., Inc. Sec. Litig.*, No. 17-2978, 2020 WL 2786936, at *4 (D.N.J. May 29, 2020) (quoting *Connelly v. Lane Constr. Corp*, 809 F.3d 780, 787 (3d Cir. 2016)).

[32] ECF Doc. No. 8-1 at 9–14.

[33] *Id.*

[34] ECF Doc. No. 11 at 12.

[35] 42 U.S.C. § 2000a-1.

[36] 42 U.S.C. § 2000a-3.

[37] *See Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402 (1968) ("When a plaintiff brings an action under [Title II], he cannot recover damages.").

Federal Rules of Civil Procedure 8(d)(2) and 8(d)(3) govern our construction of pleadings.[38] Both subsections allow the inclusion of multiple claims in one count based on the same conduct.[39] The subsections permit alternative claims "despite inconsistencies in both legal and factual allegations."[40] "[A] court may not construe a plaintiff's first claim as an admission against another alternative . . . claim."[41] Alternative, inconsistent, or hypothetical pleadings—if simple, direct, and concise—are permissible.[42]

Mses. Jeanjacques and Kesselly allege three negligence claims. Their allegations are clear and concise claiming liability under Pennsylvania common law. They reference Title II but also plead negligence under Pennsylvania law.[43] Rule 8 permits such inconsistent pleading.[44] Referencing Title II does not extinguish well-plead allegations seeking damages. We briefly evaluate each negligence claim on its merits as the theater's procedural argument fails.

---

[38] Under Rule 8(d)(2), "a party may set out [two] or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." Fed. R. Civ. P. 8(d)(2).

Under Rule 8(d)(3), "a party may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3).

[39] Fed. R. Civ. P. 8(d)(2), 8(d)(3).

[40] *In re Processed Egg Products Antitrust Litig.*, 851 F. Supp. 2d 867, 916 (E.D. Pa. 2012) (internal quotations omitted).

[41] *Id.*

[42] *See Indep Enters., Inc. v. Pittsburgh Water & Sewer Auth.*, 103 F.3d 1165, 1175 (3d Cir. 1997). We note the Federal Rules of Civil Procedure direct courts to resolve disputes "on the basis of their merits rather than upon mere procedural deficiencies." Wright and Miller, 5 Fed. Prac. & Proc. Civ. § 1284 (3d ed.).

[43] ECF Doc. No. 8-4 ¶¶ 61–64, 72–76, 84–87.

[44] *See Egg Products*, 851 F. Supp. 2d at 916; *Indep Enters.*, 103 F.3d at 1175.

***Mses. Jeanjacques and Kesselly plead negligent hiring, training, supervision, and retention.***

Employers can be liable for failing to protect third parties from employees they know, or have reason to know, are likely to cause injury.[45] Mses. Jeanjacques and Kesselly must plead (1) the theater failed to exercise ordinary care to prevent its employees from causing intentional harm while on its premises, (2) while employees acted outside the scope of their employment, and (3) while knowing, or having reason to know, of its necessity or ability to control the employees.[46] The employees' earlier behavior must also give the theater notice.[47]

Mses. Jeanjacques and Kesselly allege the theater failed to properly hire, train, and retrain its employees to prevent racial profiling and discrimination.[48] Mses. Jeanjacques and Kesselly allege theater employees directed racial insults at them.[49] We assume these facts are true. There are sufficient facts to plausibly allege a reasonable inference of negligent hiring, supervision, training, and retention.

***Mses. Jeanjacques and Kesselly plead general negligence and premises liability negligence.***

Mses. Jeanjacques and Kesselly must plead negligence by showing: (1) a duty of care; (2) breach of the duty; (3) a causal connection between the conduct and the resulting injury; and (4)

---

[45] *Adams v. U.S. Airways Grp., Inc.*, 978 F. Supp. 2d 485, 496 (E.D. Pa. 2013) (citing RESTATEMENT (SECOND) OF TORTS § 317)).

[46] *Id.* (citing *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 487–88 (3d Cir. 2013)) ("[T]he plaintiff must allege (1) a failure to exercise ordinary care to prevent an intentional harm by an employee acting outside the scope of his employment, (2) that is committed on the employer's premises, (3) when the employer knows or has reason to know of the necessity and ability to control the employee." (internal quotations omitted)).

[47] *Id.*

[48] ECF Doc. No. 8-4 ¶¶ 60–61. The complaint also alleges AMC continued to employ the manager who harassed Mses. Jeanjacques and Kesselly. *Id.* ¶ 54.

[49] *Id.* ¶ 37.

actual loss or damage.[50] Mses. Jeanjacques and Kesselly are business invitees.[51] The theater owes a duty to exercise reasonable care to protect their business invitees from third-party conduct if it has reason to anticipate such conduct.[52]

Mses. Jeanjacques and Kesselly allege the theater breached their duty to protect them from racial profiling, harassment, and discrimination.[53] The women also allege the theater's failure to properly hire, train, and supervise its employees caused the discriminatory conduct.[54] Mses. Jeanjacques and Kesselly allege the incident resulted in "mental pain and suffering, sleeplessness, paranoia, fear, depression, embarrassment, humiliation, and monetary damages."[55] We assume these facts are true. Mses. Jeanjacques and Kesselly plausibly allege facts allowing us to reasonably infer general negligence and premises liability negligence.

### *Mses. Jeanjacques and Kesselly do not plead the outrageous conduct necessary to proceed on an intentional infliction of emotional distress claim.*

The theater argues Mses. Jeanjacques and Kesselly fail to state a claim for intentional infliction of emotional distress because they failed to plead extreme and outrageous conduct. Mses. Jeanjacques and Kesselly argue the theater acted outrageously by ejecting them from the theater

---

[50] *Slemmer v. McGlaughlin Spray Foam Insulation, Inc.*, 955 F. Supp. 2d 452, 457 (E.D. Pa. 2013).

[51] *See Sheil v. Regal Ent. Grp.*, 563 F. App'x 216, 218 (3d Cir. 2014) (applying premises liability law for a patron injured at a movie theater).

[52] *Pearson v. Philadelphia Eagles, LLC*, 220 A.3d 1154, 1162–63 (Pa. Super. Ct. 2019); *see Ligato v. Wells Fargo Bank, N.A.*, No. 16-5683, 2018 WL 1141328, at *8 (E.D. Pa. Mar. 8, 2018).

[53] ECF Doc. No. 8-4 ¶¶ 72–75.

[54] *Id.* ¶ 54.

[55] *Id.* ¶ 56.

based on race and lying to police. We agree with the theater because Mses. Jeanjacques and Kesselly fail to plead threats of violence required for outrageous conduct.

Mses. Jeanjacques and Kesselly must plead four elements to state a claim for intentional infliction of emotional distress: "(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe."[56] The theater challenges the first element. Pennsylvania judges apply a "stringent standard" to the extreme and outrageous element.[57] "[O]nly the most clearly desperate and ultra extreme conduct" will suffice.[58] Mses. Jeanjacques and Kesselly must plead the theater's conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."[59] "Invidious discrimination is not alone sufficient to support an intentional infliction of emotional distress claim."[60] Intentional infliction of emotional distress claims may proceed if the conduct is egregious and involves "assault or threats of assault."[61]

---

[56] *Robinson v. Nat'l R.R. Passenger Corp.*, 821 F. App'x 97, 102 (3d Cir. 2020).

[57] *Lane v. Cole*, 88 F. Supp. 2d 402, 407 (E.D. Pa. 2000).

[58] *Doe v. Trustees of the Univ. of Pennsylvania*, 270 F. Supp. 3d 799, 827 (E.D. Pa. 2017) (quoting *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998)).

[59] *Lane*, 88 F. Supp. 2d at 406 (quoting *Hoy*, 720 A.2d at 754).

[60] *Id.*; *see also Harris v. Saint Joseph's Univ.*, No. 13-3937, 2014 WL 1910242, at *11 (E.D. Pa. May 13, 2014) ("[C]ourts in this District have repeatedly found that racial discrimination alone does not meet the extreme and outrageous conduct standard necessary to state a claim for intentional infliction of emotional distress.") (quoting *Stokley v. Bristol Borough School Dist.*, No. 13-3277, 2013 WL 4787297 (E.D. Pa.2013)).

[61] *Stokley*, 2013 WL 4787297, at *3) (citing *DiSalvio v. Lower Merion Sch. Dist.*, 158 F. Supp. 2d 553 (E.D. Pa. 2001)).

In *Lane v. Cole*, Judge Waldman found plaintiffs plead intentional infliction of emotional distress where defendants' violent threats accompanied racial discrimination.[62] Kimberly Lane, a Black woman, leased an apartment in an otherwise-all-white building and neighborhood.[63] The McQueens and their children, a Black family, visited often.[64] Defendant Rose Cole told Ms. Lane she should find elsewhere to live because her neighbors "were not tolerant" of Black people.[65] Ms. Cole evicted Ms. Lane.[66] John Cole, Ms. Cole's husband, confronted Ms. Lane in the hallway, "violently" shook his arms, threatened to "punch her," "put her in the hospital," "kill her," and "remove the blacks" from the apartment if she did not move out.[67] Ms. McQueen witnessed Mr. Cole's conduct and feared Mr. Cole would hurt her and the children, who cowered inside the apartment.[68] Judge Waldman found Mses. Lane and McQueen stated claims for intentional infliction of emotional distress.[69] He reasoned neither "mere insults [and] threats" nor "[i]nvidious discrimination" are sufficient to plead intentional infliction of emotional distress.[70] But "[t]he ejection of a tenant from her home with threats of violence in retaliation for her refusal to

---

[62] *Lane*, 88 F. Supp. 2d at 406.

[63] *Id.* at 404.

[64] *Id.*

[65] *Id.*

[66] *Id.*

[67] *Id.*

[68] *Id.* at 405.

[69] *Id.* at 406–07.

[70] *Id.* at 406.

accede to racial discrimination is another matter."[71] He reasonably inferred Ms. McQueen feared for her and her children's safety.[72]

We are also persuaded by the contrast in facts presented to Judge Pratter in *Stokley v. Bristol Borough School District* leading her to dismiss an intentional infliction of emotional distress claim because plaintiff failed to plead violence or threats of violence.[73] A Black student alleged his teacher caught two white students cheating but blamed the Black student despite his lack of involvement.[74] The teacher retroactively changed the Black student's grades but did not discipline the white students.[75] The dean of students later falsely accused the black student of cheating in another class and forbade him from participating in graduation.[76] Judge Pratter dismissed the Black student's intentional infliction of emotional distress claim despite the troubling allegations because he failed to plead "the level of physicality" needed to plead outrageousness.[77]

---

[71] *Id.* at 407.

[72] *Id.*

[73] *Stokley*, 2013 WL 4787297, at *3.

[74] *Id.* at *1.

[75] *Id.*

[76] *Id.*

[77] *Id.* at *3; *see also Harris*, 2014 WL 1910242, at *11–12 (E.D. Pa. May 13, 2014) (dismissing intentional infliction of emotional distress claim failing to plead physical injury, relying on *Stokley*).

The theater relies upon Judge Schmehl's analysis in *Lloyd v. Hilton Garden Inn*, dismissing an intentional infliction of emotional distress claim against a hotel. No. 20-4070, 2021 WL 2206291, at *5–6 (E.D. Pa. June 1, 2021). Plaintiff alleged the hotel gave her a room next to noisy neighbors. Plaintiff complained to her neighbors, which made them become noisier. *Id.* at *2. Plaintiff asked the hotel to eject the neighbors or give her a new room. *Id.* The hotel instead asked her to leave.

11

Mses. Jeanjacques and Kesselly's allegations are more like *Stokley* than *Lane* because they fail to plead the "physicality" needed for outrageousness. Mses. Jeanjacques and Kesselly plead disturbing conduct. The theater manager demanded Mses. Jeanjacques and Kesselly leave the theater after they showed the manager their tickets. He caused Ms. Jeanjacques's child to cry, then falsely accused the child's mother of stealing a ticket. The manager falsely accused Ms. Kesselly of "hiding" from him as she changed her child's diaper. The manager loudly said, "[Y]ou know black people, they don't like to pay for movies." He then lied to police about Mses. Jeanjacques and Kesselly failing to pay for their tickets.

But this upsetting, discriminatory conduct lacks the "threats of violence" required to make it "desperate and ultra-extreme" as required by the Pennsylvania Supreme Court.[78] Mses. Jeanjacques and Kesselly do not plead non-conclusory "threats of violence" as in *Lane*. They generally plead security guards "forcibly removed" them from the theater. But we cannot accept this allegation as true because it is conclusory, failing to show "how the complained-of conduct" was "forcibl[e]."[79] They also plead the incident caused them "fear." We must disregard "naked assertions devoid of further factual enhancement."[80] Mses. Jeanjacques and Kesselly allege the

---

*Id.* Plaintiff claimed the hotel discriminated against her for being Caucasian. *Id.* Judge Schmehl dismissed the intentional infliction of emotional distress claim, finding the hotel's actions "did not have potential to cause deep emotional harm as required under Pennsylvania law." *Id.* at *5. The facts presented to Judge Schmehl are not close to the offensive conduct in allegations reviewed today. We are not persuaded this dismissal offers controlling reasoning given the different levels of conduct.

[78] *See Hoy*, 720 A.2d at 754.

[79] *Schlaybach v. Berks Heim Nursing & Rehab.*, 434 F. Supp. 3d 342, 354 (E.D. Pa. 2020), *aff'd*, 839 F. App'x 759 (3d Cir. 2021).

[80] *Santiago v. Warminster Twp.*, 629 F.3d 121, 131 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).

manager lied to policy about their conduct. But we dismiss "intentional false allegations of criminal wrongdoing" unless authorities act upon them to plaintiff's detriment.[81]  We dismiss the intentional infliction of emotional dismiss claim.

Mses. Jeanjacques and Kesselly allegation regarding the security guards' "forcibl[e]" removal suggests they may be able to plead non-conclusory allegations of "threats of violence." We should resolve disputes "on their merits."[82] We dismiss the intentional infliction claim without prejudice should Mses. Jeanjacques and Kesselly adduce evidence supporting allegations of a forced removal from the theater or other "physicality."[83]

We grant in part the theater's motion to dismiss. Mses. Jeanjacques and Kesselly may proceed on their negligent hiring, training, supervision, and retention claim. Mses. Jeanjacques and Kesselly may proceed on their general negligence and premises liability negligence claims. We dismiss Mses. Jeanjacques and Kesselly's claim for intentional infliction of emotional distress without prejudice.

KEARNEY, J.

---

[81] *Martin v. Finley*, No. 15-1620, 2016 WL 8257720, at *9 (M.D. Pa. Aug. 17, 2016) (compiling cases), *report and recommendation adopted in part, overruled in part on other grounds*, No. 15-1620, 2017 WL 626752 (M.D. Pa. Feb. 15, 2017).

[82] *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 550 (2010).

[83] *See Stokley*, 2013 WL 4787297, at *3.